```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                    05-CR-54(JMR/RLE)
```

United States of America    )
                            )
        v.                  )           ORDER
                            )
Richard William Gettel      )

Defendant has been indicted on charges of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 2, 922(g)(1) and 924(e)(1). He has moved to suppress evidence obtained as a result of search and seizure, and certain statements, admissions, and answers he made to investigators. The Magistrate Judge held an evidentiary hearing on these motions and issued a Report and Recommendation on April 15, 2005, recommending denying each motion.

Defendant has objected to the Report and Recommendation pursuant to Local Rule 72.2(b). The Court has made a de novo review of the record herein, and adopts the Magistrate's recommendation as to the motion to suppress evidence, but grants defendant's motion to suppress statements.

I. Factual Findings

There are no substantive objections to the Magistrate's factual findings. The Court accordingly adopts them as follows:

> Burton Rutter ("Rutter"), who has been a Special Agent with the Bureau of Alcohol, Tobacco and Firearms ("BATF"), for sixteen (16) years, testified at the Hearing on the Motions. On March 5, 2003, Rutter received information from another officer -- namely, Otter Tail County Deputy Sheriff Jeffrey Thompson -- that Gettel had possessed a firearm, which he had learned

about from a citizen's report. The following day, Rutter ran a criminal history check on Gettel, and determined that Gettel was a multiple convicted felon but, in order to determine whether an individual is a person prohibited from possessing a firearm, Rutter had to obtain the criminal records. On March 19, 2003, Rutter received records of three of Gettel's convictions, from Waseca County, at which point, he knew that Gettel was not entitled to possess firearms, and that he would be facing significant penalties.

On October 16, 2003, Rutter attempted to interview Gettel, for the purpose of obtaining information concerning the alleged receipt and possession of two firearms. At the time, Gettel was incarcerated in the Minnesota Correctional Facility, in Rush City, Minnesota ("MCF-RC"). Although Rutter could not recall why Gettel was in custody, he testified that Gettel was serving time for another felony, which was unrelated to the firearms investigation. Rutter met with Gettel in an interview room at MCF-RC, which measured approximately ten feet by ten feet, and which contained a single table, as well as some chairs. Only Rutter and Gettel were present, and Rutter did not believe that Gettel was handcuffed, but there was no doubt in Rutter's mind that Gettel was in custody. Rutter did not have his firearm with him, because it had been secured by the MCF-RC officials, upon his arrival at that Facility.

Rutter introduced himself, displayed his official credentials, and gave his business card to Gettel. When Rutter asked Gettel if he was familiar with the BATF, Gettel responded that he was "somewhat" familiar. Rutter explained that the purpose of the BATF was to investigate firearms violations, and that he was assisting the Todd County Sheriff in seeking the recovery of a stolen 9 millimeter caliber pistol. Rutter further told Gettel that he was not a suspect in stealing the firearm, and that he might not have even known that it was stolen, and he stated that he had information that Gettel had obtained possession of the pistol from Seth Greiner ("Greiner"). Gettel interrupted Rutter, and stated that he did not receive the gun from Greiner, but rather that Troy Foote ("Foote") had the gun at his house, and Foote gave it to Gettel.

2

> Rutter stopped Gettel, and told him that although he was interested in what Gettel had to say, he had to be read his rights [under Miranda] and that he had to waive those rights, in order for the two of them to continue speaking. Rutter read Gettel his rights from the waiver form, which Gettel signed, and he asked if Gettel was willing to speak with him. Gettel then stated, "Maybe I should speak with an attorney first." At that time Rutter concluded his interview, got up from his chair, and pressed the button, with the intention of leaving. On his way out of the interview room, Rutter told Gettel that he might also want to talk with his attorney about a .22 caliber rifle. Gettel responded by stating, "That was just a .22," and "everybody has a .22." Rutter testified that the entire encounter with Gettel lasted approximately twenty minutes, and he further stated that he was aware of Gettel's criminal history, which included around nine felony convictions.

Report and Recommendation at 2-4 (citations and footnotes omitted).

II. Discussion

Defendant claims his statements during the interview at MCF-RC were obtained in violation of his Fifth Amendment rights. The Court agrees. Agent Rutter elicited incriminating statements through custodial interrogation prior to administering Miranda warnings, and elicited another statement after defendant invoked his right to counsel. These statements are suppressed.

A. *Miranda* Warning

"The requirements of Miranda are triggered only when a defendant is both in custody and being interrogated." United States v. Head, 407 F.3d 925, 928 (8th Cir. 2005). Defendant was clearly in custody when he made the incriminating statement regarding the 9mm handgun. But "[a] statement made by a suspect that is voluntary and not in response to interrogation is

3

admissible with or without the giving of Miranda warnings." Id. The Court, then, considers whether defendant's statements were in response to interrogation.

"Interrogation includes not only express questioning by law enforcement officers, but also words or actions that officers should know are reasonably likely to elicit an incriminating response from a suspect." Id. Here, Agent Rutter told defendant he was investigating the theft of a 9mm handgun and had information that defendant possessed it. Both Agent Rutter and defendant knew it was a felony for defendant to possess a firearm. As a result, Agent Rutter was accusing defendant of a felony, and positing his guilt as fact. Agent Rutter should have known this open accusation was "reasonably likely to elicit an incriminating response." See Rhode Island v. Innis, 446 U.S. 291, 299 (1980) (noting that "to posit the guilt of the subject" is interrogation) (internal quotations and alteration omitted). Accordingly, defendant's pre-Miranda-warning statement concerning the 9mm handgun must be suppressed.

    B.  Right to Counsel

Under Miranda and the Fifth Amendment, a suspect under custodial interrogation has "the right to consult with an attorney and to have counsel present during questioning." Davis v. United States, 512 U.S. 452, 457 (1994). "Once a suspect invokes his right to have counsel present during a custodial interrogation, all questioning must cease until counsel is present." United

4

States v. Barahona, 990 F.2d 412, 418 (8th Cir. 1993). To invoke the right, however, a suspect "must unambiguously request counsel." Davis, 512 U.S. at 459. Thus, "if a suspect makes a reference to an attorney that is ambiguous or equivocal," the questioning can continue. Id. In Davis, for example, the Supreme Court found that the statement "Maybe I should talk to a lawyer" was equivocal, and did not require cessation of the interrogation. Id. at 462.

The Court finds there was no equivocation here. Mr. Gettel unambiguously invoked his right to counsel. While his statement bears a superficial similarity to one found equivocal in Davis, the context is entirely different. In Davis, the defendant said "Maybe I should talk to a lawyer" more than an hour-and-a-half after being advised of, and having waived, his Miranda rights.[1] Id. at 455. Davis was asked to clarify his request and replied, "No, I'm not asking for a lawyer," and "No, I don't want a lawyer." Id.

Mr. Gettel, on the other hand, said, "Maybe I should speak with an attorney first" immediately after being advised of his right to an attorney. The Court considers his "maybe" as a figure of speech -- as in, "Maybe I'd better" -- rather than a sign of equivocation. Agent Rutter himself provides the best evidence of this. Unlike Davis, where the investigators asked for

---

[1]Technically, Davis's waiver occurred under Article 31 of the Uniform Code of Military Justice. 10 U.S.C. § 831. The Davis Court, however, applied Miranda to the claim. Davis, 512 U.S. at 457, n.* (1994).

5

clarification, Rutter immediately stopped the interview and rose to leave. Then he glibly suggested the subject about which defendant should speak to his attorney.

This suggestion -- that defendant talk with his attorney about a .22 caliber rifle -- elicited defendant's other incriminating statement. Agent Rutter should have expected his parting comment to elicit an incriminating response. Since this occurred after defendant invoked his right to counsel, this was improper custodial interrogation. Accordingly, defendant's statement regarding the .22 caliber rifle must be suppressed.

III. Conclusion

For the foregoing reasons, defendant's motion to suppress statements is granted. The Court adopts the Magistrate's recommendation in denying defendant's motion to suppress evidence. Accordingly, IT IS ORDERED that:

1. Defendant's motion to suppress evidence obtained as a result of search and seizure [Docket No. 22] is denied.
2. Defendant's motion to suppress statements, admissions, and answers [Docket No. 23] is granted in accordance with this Order.

Dated: July 7, 2005

s/ James M Rosenbaum
JAMES M. ROSENBAUM
United States Chief District Judge